IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| HARVEY T., JANE R., and WILLIAM T., <br><br> Plaintiffs, <br><br> v. <br><br> AETNA LIFE INSURANCE COMPANY and the INVESCO LIFE CYCLE FLEX PLAN, <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER DENYING [39] DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART PLAINTIFFS' [40] MOTION FOR SUMMARY JUDGMENT** <br><br> Case No. 2:18-cv-00351-DBB-DAO <br><br> District Judge David Barlow |

Defendant Aetna Life Insurance Company (Aetna) denied Plaintiffs' claims for healthcare reimbursement under an employee welfare benefits plan. Plaintiffs contend their claims were wrongly denied under the Employee Retirement Income Security Act of 1974 (ERISA).[1] Before the court are the parties' cross-motions for summary judgment.[2] Having considered the briefing and the relevant law, the court denies Defendants' Motion for Summary Judgment and grants in part and denies in part Plaintiffs' Motion for Summary Judgment.

---

[1] *See generally* 29 U.S.C. § 1001, *et seq.*

[2] Plaintiffs' Motion for Summary Judgment (Plaintiffs' Motion), ECF No. 40, filed February 14, 2020; Defendants' Motion for Summary Judgment (Defendants' Motion), ECF No. 39, filed February 14, 2020.

## BACKGROUND

Harvey T. was a participant in the Invesco LifeCycle Flex Plan (Plan), an employee welfare benefits plan governed by ERISA.[3] His son, W.T., was a beneficiary of the Plan.[4] Aetna "provide[s] certain administrative services to the Plan."[5] The Plan gives Aetna the "exclusive discretionary authority to construe and to interpret the plan, to decide all questions of eligibility for benefits, and to determine the amount of such benefits."[6]

The Plan covers certain medically necessary services, including mental health care.[7] With respect to the type of mental health care covered, the Plan provides in relevant part,

> Covered expenses include charges made for the treatment of mental disorders by behavioral health providers.
> . . .
> Not all types of services are covered. For example, educational services and certain types of therapies are not covered. See the *Health Plan Exclusions and Limits* section for more information.
>
> Benefits are payable for charges incurred in a hospital, psychiatric hospital, residential treatment facility or behavioral health provider's office for the treatment of mental disorders as follows:
>
> Inpatient Treatment
> Covered expenses include charges for room and board at the semi-private room rate, and other services and supplies provided during your stay in a hospital, psychiatric hospital, or residential treatment facility. Inpatient benefits are payable only if your condition requires services that are only available in an inpatient setting.

---

[3] *See* AETTEP 81. For ease of identification, the court refers to the Bates-numbered administrative record of Aetna's benefits decision as "AETTEP" followed by the number.

[4] Complaint at ¶ 5, ECF No. 2, filed April 27, 2018.

[5] AETTEP 5.

[6] *Id.* 80, 193.

[7] *Id.* 49, 162.

Important Reminder
Inpatient care, partial hospitalizations and certain outpatient treatment must be
precertified by Aetna. Refer to *How the Plan Works* for more information about
precertification.[8]

The Plan defines "behavioral health provider/practitioner" as a "licensed organization or

professional providing diagnostic, therapeutic or psychological services for behavioral health

conditions."[9] The Plan defines mental disorder as an

illness classified by Aetna as a mental disorder, whether or not it has a
physiological basis, and for which treatment is generally provided by or under the
direction of a behavioral health provider . . . . A mental disorder includes; but is
not limited to:

- Alcoholism and substance abuse.
- Bipolar disorder.
- Major depressive disorder.
- Obsessive compulsive disorder.
- Panic disorder.
- Psychotic depression.
- Schizophrenia.[10]

However, "[n]ot all types of services are covered. For example, educational services and

certain types of therapies are not covered."[11] Under "Medical Plan Exclusions" the Plan indicates

that it "covers only those services and supplies that are medically necessary and included in the

*What the Plan Covers* section."[12] The "Medical Plan Exclusions" also list as excluded certain

"Educational services:"

---

[8] *Id.* 49, 162.

[9] *Id.* 87, 201.

[10] *Id.* 95, 209.

[11] AETTEP 49, 162.

[12] *Id.* 54, 166.

- Any services or supplies related to education, training or retraining services or testing, including: special education, remedial education, job training and job hardening programs;
- Evaluation or treatment of learning disabilities, minimal brain dysfunction, developmental, learning and communication disorders, behavioral disorders, (including pervasive developmental disorders) training or cognitive rehabilitation, regardless of the underlying cause; and
- Services, treatment, and educational testing and training related to behavioral (conduct) problems, learning disabilities and delays in developing skills, except as specifically covered under the Speech Therapy Rehabilitation Benefit in the What the medical Plan covers section.[13]

The Plan requires certain services to be precertified, which helps the beneficiary and the beneficiary's physician "determine whether the services being recommended are covered expenses under the plan" and "allows Aetna to help [the] provider coordinate [the] transition from an inpatient setting to an outpatient setting (called discharge planning), and to register [the] beneficiary] for specialized programs or case management when appropriate."[14] "Stays in a treatment facility for treatment of mental disorders or substance abuse treatment" require precertification.[15] In instances when precertification was "not requested, but would have been covered if requested" then expenses are "covered after a precertification benefit reduction is applied."[16] The benefit reduction is in the amount of $350.[17]

W.T. attended Daniels Academy, a licensed residential treatment center in Utah,[18] from April 30, 2015 until August 11, 2016.[19] W.T.'s parents did not precertify the services he received

---

[13] *Id.* 56, 169.

[14] *Id.* 15, 126.

[15] *Id.* 17, 128.

[16] AETTEP 17, 128.

[17] *Id.*

[18] *Id.* 591.

[19] Plaintiffs' Motion at ¶¶ 27, 34; Defendants' Motion at ¶ 25.

at Daniels Academy,[20] but later submitted the claims to Aetna.[21] On February 19, 2016, Aetna denied the claims, providing that "[t]he plan has a specific exclusion for the requested service or treatment. Please see the exclusions listed in the Exclusions section of the benefit plan document."[22] On April 4, 2016, Aetna sent W.T. a letter again explaining that the claims were denied based on "a specific exclusion for the requested service or treatment" and directing Plaintiffs to "the exclusions listed in the Exclusions section of the benefit plan document."[23]

Plaintiffs submitted a Level One appeal.[24] Aetna upheld the denial of coverage citing a plan exclusion and referring Plaintiffs to Exclusions and Limitations section of their Certificate of Coverage.[25] Aetna also noted that Plaintiffs "did not meet [their] plan's precertification timeframe for [W.T.'s] stay" and so their "benefits were paid at a reduced rate."[26] Aetna listed the items it reviewed in making its determination.[27] It then included an excerpt from the "Treatment of Mental Disorders" part of the Plan, which states in relevant part,

> Covered expenses include charges made for the treatment of mental disorders by behavioral health providers.
> . . .
> Not all types of services are covered. For example, educational services and certain types of therapies are not covered. See the *Health Plan Exclusions and Limits* section for more information.

---

[20] Plaintiffs' Motion at ¶ 32; Defendants' Motion at ¶ 27.

[21] *See* Defendants' Motion at ¶ 28; *see also* AETTEP 614–27.

[22] AETTEP 578.

[23] *Id.* 226.

[24] *Id.* 551–58.

[25] *Id.* 630.

[26] *Id.*

[27] *Id.*

Benefits are payable for charges incurred in a hospital, psychiatric hospital, residential treatment facility or behavioral health provider's office for the treatment of mental disorders as follows:

Inpatient Treatment
Covered expenses include charges for room and board at the semi-private room rate, and other services and supplies provided during your stay in a hospital, psychiatric hospital, or residential treatment facility. Inpatient benefits are payable only if your condition requires services that are only available in an inpatient setting.

Important Reminder
Inpatient care, partial hospitalizations and certain outpatient treatment must be precertified by Aetna. Refer to *How the Plan Works* for more information about precertification.[28]

Plaintiffs then submitted a Level Two appeal.[29] Aetna again identified the materials it reviewed in making its determination,[30] and it upheld its denial of coverage.[31] Aetna stated,

As explained in the [Plan], under the topic "Medical Plan Exclusions", it states: "Not every medical service or supply is covered by the plan, even if prescribed, recommended, or approved by your physician or dentist. The plan covers only those services and supplies that are medically necessary and included in the *What the Plan Covers* section. Charges made for the following are not covered except to the extent listed under the *What the Plan Covers* section or by amendment attached to this Booklet . . . Unauthorized services, including any service obtained by or on behalf of a covered person without Precertification by Aetna when required. This exclusion does not apply in a Medical Emergency or in an Urgent Care situation."[32]

"Because the claims were administratively denied as not covered, no medical necessity review was conducted."[33]

---

[28] AETTEP 631.

[29] *Id.* 637–42.

[30] *Id.* 717.

[31] *Id.* 717–18.

[32] *Id.* 718.

[33] Defendants' Motion at 24.

## LEGAL STANDARD

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[34] "When both parties move for summary judgment in an ERISA case, thereby stipulating that a trial is unnecessary, 'summary judgment is merely a vehicle for deciding the case; the factual determination of eligibility of benefits is decided solely on the administrative record, and the non-moving party is not entitled to the usual inferences in its favor.'"[35]

### B. Review of Benefits Decision under ERISA

The court must first determine the standard under which to review Aetna's decisions. The United States Supreme Court has observed that "the validity of a claim to benefits under an ERISA plan is likely to turn on the interpretation of terms in the plan at issue."[36] Applying the law of trusts, the Court held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."[37] "[I]f the plan gives the administrator discretionary authority, '[courts] employ a deferential standard of review, asking only whether the denial of benefits was arbitrary and capricious.'"[38]

---

[34] Fed. R. Civ. P. 56(a).

[35] *Michael D. v. Anthem Health Plans of Ky., Inc.*, 369 F. Supp. 3d 1159, 1167 (D. Utah 2019) (quoting *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 796 (10th Cir. 2010)).

[36] *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

[37] *Id.*

[38] *Hodges v. Life Ins. Co. of N. Am.*, 920 F.3d 669, 675 (10th Cir. 2019) (quoting *LaAsmar*, 605 F.3d 789 at 796).

The court's review is "limited to determining whether the interpretation of the plan was reasonable and made in good faith" under this deferential standard of review.[39]

Here, the parties do not dispute that the Plan confers discretionary authority on the administrator to interpret the Plan and make benefits decisions.[40] Plaintiffs challenge Aetna's decision denying payment of benefits based upon its interpretation of the Plan,[41] however, interpretation of the Plan is precisely within Aetna's conferred discretion.[42] Accordingly, the arbitrary and capricious standard is the presumptive standard of review.

Plaintiffs argue that despite Aetna's discretion, a heightened standard of review should apply because Aetna failed to adhere to ERISA's procedural requirements, thus forfeiting a more deferential standard of review.[43] Defendants counter that the court is bound by Tenth Circuit precedent, which calls for an arbitrary and capricious standard of review so long as the administrator substantially complied with ERISA's procedural requirements.[44]

Every employee benefit plan must "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant."[45]

---

[39] *Id.*

[40] *See* AETTEP 80, 193 ("The Plan Administrator, Aetna and its delegates, have the exclusive discretionary authority to construe and to interpret the plan, to decide all questions of eligibility for benefits, and to determine the amount of such benefits, and its decisions on such matters are final and conclusive. Benefits will be paid only if the Plan Administrator or Aetna decides in its discretion that the applicant is entitled to them.").

[41] *See generally* Plaintiffs' Motion.

[42] *See* AETTEP 80, 193.

[43] Plaintiffs' Motion at 14–17.

[44] Defendants' Motion at 15–16.

[45] 29 U.S.C. § 1133(1). This section is the codified Section 503 of ERISA. The relevant implementing regulations are codified at 29 C.F.R. § 2560.503-1.

These plans further must "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim."[46] To effectively address internal claims and appeals and ensure a full and fair review process, the Department of Labor has developed certain procedural requirements.[47] The plan's claim procedures must "contain administrative processes and safeguards designed to ensure and to verify that benefit claim determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to similarly situated claimants."[48] Under regulatory subsection 2560.503-1(*l*),

> in the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of [ERISA] on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.[49]

Subsection 2560.503-1(*l*) says nothing about the applicable judicial standard of review. The Department of Labor, however, has explained that the deemed-exhausted provision in this subsection is intended to "clarify that the procedural minimums of the regulation are essential to

---

[46] 29 U.S.C. § 1133(2).

[47] *See generally* 29 C.F.R. § 2560.503-1 (implementing ERISA Section 503); *see also id.* § 2590.715-2719(b) (implementing "[o]ther consumer protection provisions, including other protections provided by the Affordable Care Act and the Mental Health Parity and Addiction Equity Act" as stated in 29 C.F.R. § 2590.701-1(b)).

[48] 29 C.F.R. § 2560.503-1(b)(5).

[49] *Id.* § 2560.503-1(*l*). In a similar regulation under the Patient Protection and Affordable Care Act, the Department of Labor has more specifically stated that where a plan fails to provide required procedural protections, the participant's "claim or appeal is deemed denied on review without the exercise of discretion by an appropriate fiduciary." *Id.* § 2590.715-2719(b)(2)(ii)(F)(1).

procedural fairness and that a decision made in the absence of the mandated procedural protections *should not be entitled to any judicial deference*."[50]

In *Halo v. Yale Health Plan, Director of Benefits and Records Yale University*,[51] the Second Circuit observed that despite ERISA's requirement that a plan administrator provide specific reasons for an adverse determination, "in at least one notification, the only explanation Yale Health Plan provided to Halo was 'SERVICE NOT AUTHORIZED.'"[52] It then noted that "under certain circumstances, a plan administrator's failure to comply with the letter of the claims procedures outlined in ERISA requires courts to eschew the more deferential arbitrary and capricious review normally applied to an administrator's discretionary decisions in favor of a more searching de novo review."[53] Finding 29 C.F.R. § 2560.503-1(*l*) ambiguous with respect to the applicable judicial standard of review, the Second Circuit deferred to the Department of Labor's interpretation that the deemed-exhausted provision was meant to eliminate deferential judicial review.[54] The Second Circuit ultimately held,

> when denying a claim for benefits, a plan's failure to comply with the Department of Labor's claims-procedure regulation, 29 C.F.R. § 2560.503–1, will result in that claim being reviewed de novo in federal court, unless the plan has otherwise established procedures in full conformity with the regulation and can show that its failure to comply with the claims-procedure regulation in the processing of a particular claim was inadvertent *and* harmless.[55]

---

[50] EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974; RULES AND REGULATIONS FOR ADMINISTRATION AND ENFORCEMENT; CLAIMS PROCEDURE, 65 FR 70246-01 at 70255 (emphasis added).

[51] 819 F.3d 42 (2d Cir. 2016).

[52] *Id.* at 46; *see* 29 C.F.R. § 2560.503-1(g)(1)(i), (ii) (requiring a "specific reason" for denial of benefits with "[r]eference to the specific plan provisions on which the determination is based").

[53] *Halo*, 819 F.3d at 47 (citation and internal quotation marks omitted).

[54] *Id.* at 53 (quoting 65 Fed. Reg. 70246-01, 70,255).

[55] *Id.* at 60–61.

Plaintiffs request that the court adopt the *Halo* approach. But 29 C.F.R. § 2560.503-1(*l*) is not ambiguous, and so the court cannot adopt the Second Circuit's analysis. "A regulation is ambiguous if it is reasonably susceptible to more than one interpretation or capable of being understood in two or more possible senses or ways."[56] The court begins by "examining the plain language of the text, giving each word its ordinary and customary meaning."[57] "If, after engaging in this textual analysis, the meaning of the regulations is clear, [the court's] analysis is at an end[.]"[58]

Although Subsection 2560.503-1(*l*)(1) permits a civil action when a plan fails to use a reasonable claims procedure, it says nothing about the judicial standard of review for that subsequent proceeding. [59] Subsection 2560.503-1(*l*)(1) only authorizes a "route to judicial review" that administrative exhaustion requirements would otherwise preclude.[60] Because it does not address the applicable standard of review, its language cannot be susceptible to more than one interpretation on this point. Thus the court declines to adopt the *Halo* approach.

Tenth Circuit precedent provides that the standard of review can be heightened to de novo despite a plan administrator's discretionary authority if: the administrator fails to exercise discretion within the required timeframe or fails to apply its expertise to a particular decision;[61]

---

[56] *Jake's Fireworks Inc. v. Acosta*, 893 F.3d 1248, 1261 (10th Cir. 2018) (citation and internal quotation marks omitted).

[57] *Mitchell v. Comm'r*, 775 F.3d 1243, 1249 (10th Cir. 2015).

[58] *Id.*

[59] 29 C.F.R. § 2560.503-1(*l*)(1).

[60] *Joel S. v. Cigna*, 356 F. Supp. 3d 1305, 1312 (D. Utah 2018)*, appeal dismissed* (Mar. 28, 2019).

[61] *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 631–32 (10th Cir. 2003).

the case involves "serious procedural irregularities"[62] or "procedural irregularities in the administrative review process;"[63] or the plan members lack notice of the administrator's discretionary authority.[64] However, there are exceptions that draw the standard back to arbitrary and capricious, including the substantial compliance exception.[65] "[I]n the context of an ongoing, good faith exchange of information between the administrator and the claimant, inconsequential violations of the deadlines or other procedural irregularities would not entitle the claimant to de novo review."[66] Although the Tenth Circuit has questioned the continued viability of this exception in light of regulatory changes,[67] it remains precedent to not "apply 'a hair-trigger rule' requiring de novo review whenever the plan administrator, vested with discretion, failed *in any respect* to comply with the procedures mandated by this regulation."[68] So, bound by this

---

[62] *Martinez v. Plumbers & Pipefitters Nat. Pension Plan*, 795 F.3d 1211, 1215 (10th Cir. 2015).

[63] *LaAsmar*, 605 F.3d at 797; *Mary D. v. Anthem Blue Cross Blue Shield*, 778 F. App'x 580, 588 (10th Cir. 2019) (unpublished).

[64] *Lyn M. v. Premera Blue Cross*, 966 F.3d 1061, 1065 (10th Cir. 2020).

[65] *See, e.g.*, *Finley v. Hewlett-Packard Co. Employee Benefits Org. Income Prot. Plan*, 379 F.3d 1168, 1174 (10th Cir. 2004) (explaining that the claimant's administrative appeal falls into the "McGarrah exception," where deferential review applies "if a claimant fails to provide meaningful new evidence or raise significant new issues on administrative appeal, and the delay does not undermine the court's confidence in the integrity of the administrator's decision-making process" (brackets, citations, and internal quotation marks omitted) (quoting *McGarrah v. Hartford Life Ins. Co.*, 234 F.3d 1026, 1031 (8th Cir. 2000)).

[66] *Rasenack ex rel. Tribolet v. AIG Life Ins. Co.*, 585 F.3d 1311, 1317 (10th Cir. 2009) (citing *Gilbertson*, 328 F.3d at 634).

[67] *Kellogg v. Metro. Life Ins. Co.*, 549 F.3d 818, 828 (10th Cir. 2008) ("In January 2002, amendments to the regulations took effect that have called into question the continuing validity of the substantial compliance rule."); *see also Halo*, 819 F.3d at 56 ("Whatever the merits of applying the substantial compliance doctrine under the 1977 claims-procedure regulation, we conclude that the doctrine is flatly inconsistent with the 2000 regulation."). In its 2000 implementation, the Department of Labor explicitly rejected the suggestions that it implement a "standard of good faith compliance as the measure for requiring administrative exhaustion," and it rejected the suggestion that it "recognize the judicial doctrine under which exhaustion is required unless the administrative processes impose actual harm on the claimant." EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974; RULES AND REGULATIONS FOR ADMINISTRATION AND ENFORCEMENT; CLAIMS PROCEDURE, 65 FR 70246-01 at 70255–56.

[68] *LaAsmar*, 605 F.3d at 799.

precedent, the court examines whether Aetna substantially complied with ERISA's procedural requirements.

Plaintiffs argue that Aetna did not substantially comply with ERISA's procedural regulations set forth in 29 C.F.R. § 2560.503-1(g)(1).[69] They contend that Aetna failed to provide the specific reasons for the claim denial, failed to explain why W.T.'s treatment at Daniels Academy was not covered under the Plan, and failed to explain why the lack of precertification resulted in a complete denial of payment for W.T.'s treatment.[70] Plaintiffs further argue that Aetna violated § 2590.715-2719(b)(2)(E)(3) because Aetna did not provide Plaintiffs with a "discussion of the decision" for its final internal determinations.[71] Plaintiffs also argue that Aetna did not take into account Plaintiffs' arguments and other information submitted with the appeal letters because Aetna did not articulate that it considered those documents in its denial letters.[72]

The federal regulations require Aetna to give Plaintiffs "(i) [t]he specific reason or reasons for the adverse determination[,] [and] (ii) [r]eference to the specific plan provisions on which the determination is based."[73] Aetna told Plaintiffs that the charges were not covered because an exclusion applied and later also noted that Plaintiffs had failed to precertify the services.[74] Simply stating that an exclusion applies, but failing to identify the particular

---

[69] Plaintiffs' Motion at 17–22.

[70] *Id.* at 18.

[71] *Id.*

[72] *Id.*; *see also* Plaintiffs' Opposition to Defendants' Motion for Summary Judgment, at 7, ECF No. 44, filed March 13, 2020 (citing *Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co.*, 491 F.3d 1180, 1191–91 (10th Cir. 2007) *abrogated on other grounds by Metro. Life Ins. Co v. Glenn*, 554 U.S. 105 (2008)).

[73] 29 C.F.R. § 2560.503-1(g)(1)(i)–(iii).

[74] AETTEP 630–32, 718, 734, 745.

exclusion, is not very specific or helpful. However, Plaintiffs appear to have understood the general coverage issue, arguing in their appeal that Daniels Academy was a licensed "residential treatment center" providing "multidisciplinary mental health therapy treatment services."[75] Plaintiffs were able to effectively challenge the claim denial, and the court will not change the standard of review on this record.[76] Aetna also substantially complied with the second requirement because it referred Plaintiffs to the "How the Plan Works" and "What the Plan Covers" sections of the Plan.[77]

ERISA's procedural regulations further require that "[i]n the case of a notice of final internal adverse benefit determination" Aetna "must include a discussion of the decision."[78] Aetna met this requirement because in its denial, it listed the materials that it reviewed on appeal;[79] provided specific reasons for the denial;[80] and invited Plaintiffs to call Member Services for further discussion.[81] While Aetna's review may not have contained all that Plaintiffs hoped it would have, it is not a procedural irregularity. Aetna articulated its basis for denial of the claims and thus substantially complied with ERISA's procedural requirements.

In sum, the Plan confers on Aetna the discretion to interpret the Plan and make benefits decisions pursuant to the Plan. The court therefore applies the arbitrary and capricious standard of review. The plain language of the ERISA implementing regulations does not dictate a less

---

[75] AETTEP 655.

[76] *See Wesson v. Jane Phillips Med. Ctr.*, 870 F. Supp. 2d 1263, 1269 (N.D. Okla. 2012).

[77] *Id.* 49, 54, 631, 718.

[78] 29 C.F.R. § 2590.715-2719(b)(2)(E)(3).

[79] AETTEP 630–31, 717.

[80] *Id.*

[81] *Id.* 632, 718.

deferential standard, and Plaintiffs have not shown serious procedural irregularities that would require a less deferential standard. Accordingly, the court's review "is limited to determining whether the interpretation of the plan was reasonable and made in good faith."[82]

## DISCUSSION

"Under arbitrary and capricious review, this court upholds [the administrator's] determination so long as it was made on a reasoned basis and supported by substantial evidence."[83] The Tenth Circuit defines substantial evidence as "such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decision-maker. Substantial evidence requires more than a scintilla but less than a preponderance."[84]

### A. Aetna's Decision Denying Plaintiffs' Benefits Based on the Educational Services Exclusion Was Arbitrary and Capricious.

Aetna denied Plaintiffs' benefits claims for treatment at Daniels Academy because of "a specific exclusion for the requested service or treatment"—the educational services exclusion.[85] The excluded services are,

- Any services or supplies related to education, training or retraining services or testing, including: special education, remedial education, job training and job hardening programs;
- Evaluation or treatment of learning disabilities, minimal brain dysfunction, developmental, learning and communication disorders, behavioral disorders, (including pervasive developmental disorders) training or cognitive rehabilitation, regardless of the underlying cause; and
- Services, treatment, and educational testing and training related to behavioral (conduct) problems, learning disabilities and delays in developing skills,

---

[82] *LaAsmar*, 605 F.3d at 796 (citation and internal quotation marks omitted).

[83] *Van Steen v. Life Ins. Co. of N. Am.*, 878 F.3d 994, 997 (10th Cir. 2018).

[84] *Graham v. Hartford Life & Acc. Ins. Co.*, 589 F.3d 1345, 1358 (10th Cir. 2009) (quoting *Sandoval v. Aetna Life & Cas. Ins. Co.*, 967 F.2d 377, 382 (10th Cir. 1992)).

[85] AETTEP 226–27, 578–81, 631, 638.

except as specifically covered under the Speech Therapy Rehabilitation Benefit in the What the medical Plan covers section.[86]

However, the Plan provides coverage for certain mental health and therapeutic treatments:[87]

Covered expenses include charges made for the treatment of mental disorders by behavioral health providers.
. . .
Not all types of services are covered. For example, educational services and certain types of therapies are not covered. See the *Health Plan Exclusions and Limits* section for more information.

Benefits are payable for charges incurred in a hospital, psychiatric hospital, residential treatment facility or behavioral health provider's office for the treatment of mental disorders as follows:

Inpatient Treatment
Covered expenses include charges for room and board at the semi-private room rate, and other services and supplies provided during your stay in a hospital, psychiatric hospital, or residential treatment facility. Inpatient benefits are payable only if your condition requires services that are only available in an inpatient setting.

Important Reminder
Inpatient care, partial hospitalizations and certain outpatient treatment must be precertified by Aetna. Refer to *How the Plan Works* for more information about precertification.[88]

The record contains evidence suggesting that W.T. received certain educational services during his time at Daniels Academy.[89] But the record also contains evidence suggesting that while at Daniels Academy W.T. participated in individual therapy,[90] family therapy,[91] process

---

[86] *Id.*

[87] *Id.* 49.

[88] *Id.*

[89] *See, e.g.*, *id.* 251–255, 257–58, 261–62, 265, 268–69, 273, 323, 327, 340, 387, 405–06.

[90] *See, e.g.*, *id.* 271, 286, 293, 307, 316, 325, 334.

[91] *See, e.g.*, AETTEP 267, 288, 292, 308, 312, 315, 319, 332, 336.

group therapy,[92] recreation therapy,[93] and was seen by a physician.[94] Aetna made no findings about the nature of these services, rather it categorically denied coverage based on its view of Daniels Academy as a boarding school.[95] These services may be covered if they were "treatment of mental disorders by behavioral health providers."[96] There are no findings of whether the providers at Daniels Academy qualified as "behavioral health providers," nor are there findings of whether W.T.'s diagnoses were covered "mental disorders."

Because the record evidence identifies certain services that may be covered under the Plan, a categorical denial of coverage based on the educational services exclusion is not supported by substantial evidence. The court concludes that Aetna's denial of benefits based on the educational services exclusion was arbitrary and capricious.

### B. Any Categorical Denial of Coverage Based on Plaintiffs' Failure to Precertify, as Opposed to a Reduction in Covered Benefits Paid, Would Be Arbitrary and Capricious.

In its first two denials, Aetna said nothing about Plaintiffs' failure to precertify.[97] Aetna then identified during the Level One appeals process that Plaintiffs "did not meet [their] plan's precertification timeframe" and so "benefits were paid at a reduced rate."[98] This statement is an

---

[92] *See, e.g., id.* 256, 270, 272, 275–80, 309, 313–14, 317–18.

[93] *See, e.g., id.* 259, 266, 289, 320, 335.

[94] *See, e.g., id.* 263, 299–300, 328–29.

[95] *See id.* 226–27, 578–81.

[96] *Id.* 49.

[97] *See* AETTEP 226, 578.

[98] *Id.* 630.

accurate reflection of the Plan's provisions.[99] During the Level Two appeals process Aetna provided,

> As explained in the [Plan], under the topic "Medical Plan Exclusions", it states: "Not every medical service or supply is covered by the plan, even if prescribed, recommended, or approved by your physician or dentist. The plan covers only those services and supplies that are medically necessary and included in the *What the Plan Covers* section. Charges made for the following are not covered except to the extent listed under the *What the Plan Covers* section or by amendment attached to this Booklet . . . Unauthorized services, including any service obtained by or on behalf of a covered person without Precertification by Aetna when required. This exclusion does not apply in a Medical Emergency or in an Urgent Care situation."[100]

It is unclear what Aetna is saying in this explanation. Aetna mentions "precertification" in its coverage discussion, but does not clarify whether it is simply affirming the Level One appeal's finding that any coverage would be reduced for failure to precertify, or whether it was taking the position that a failure to precertify was an absolute bar to coverage.

By contrast, Aetna's briefing to this court is clear. It takes the position that the Plan provides Aetna discretion to outright deny benefits for services that were not precertified but would have been covered by the Plan.[101] This position contradicts the Plan's language.

The Plan states that in instances when precertification was "not requested, but would have been covered if requested" then expenses are "covered after a precertification benefit reduction is applied."[102] The benefit reduction is in the amount of $350.[103] The Plan contemplates a reduction in benefits—not an outright denial—in situations where the services

---

[99] *See id.* 17, 128.

[100] *Id.* 718.

[101] Defendants' Motion at 18–19.

[102] AETTEP 17, 128.

[103] *Id.*

would have been covered if they had been precertified.[104] According to the Plan, an outright denial of benefits is only permissible if precertification was not requested and the services would not have been covered.[105] Aetna cannot ignore the specific language that applies in certain circumstances when interpreting the Plan, preferring instead to focus on more general language. The litigation position that the Plan allows for outright denial of benefits for Plaintiffs' failure to precertify services is without merit. In short, it is unclear whether Aetna was attempting to assert a categorical denial of benefits for Plaintiffs based on lack of precertification. This issue will be remanded to Aetna.

## REMEDY

### A. Remand is the Proper Remedy Under the Circumstances

"Generally speaking, when a reviewing court concludes that a plan administrator has acted arbitrarily and capriciously in handling a claim for benefits, it can either remand the case to the administrator for a renewed evaluation of the claimant's case, or it can award a retroactive reinstatement of benefits."[106] As the Tenth Circuit has observed,

> Which of these two remedies is proper in a given case, however, depends upon the specific flaws in the plan administrator's decision. In particular, if the plan administrator failed to make adequate findings or to explain adequately the grounds of its decision, the proper remedy is to remand the case to the administrator for further findings or explanation. In contrast, a retroactive reinstatement of benefits is proper where, but for the plan administrator's arbitrary and capricious conduct, the claimant would have continued to receive the benefits

---

[104] *See id.* 18, 129.

[105] *Id.*

[106] *DeGrado v. Jefferson Pilot Fin. Ins. Co.*, 451 F.3d 1161, 1175 (10th Cir. 2006) (citation and internal quotation marks omitted).

or where there was no evidence in the record to support a termination or denial of benefits.[107]

Here, remand is appropriate because Aetna made no findings about the nature of the services W.T. received at Daniels Academy. Instead it categorically excluded the services based on the educational services exclusion. Further, if indeed at least some of the services W.T. received at Daniels Academy could be covered under the Plan, there remains the question of medical necessity. Based on the record evidence, the court cannot determine whether Aetna's denial of benefits was supported.[108] This case is not "so clear cut that it would be unreasonable for the plan administrator to deny the application for benefits on any ground."[109] Rather, the circumstances of this case call for the court to remand for Aetna to provide a full and fair evaluation of Plaintiffs' claims. Aetna should consider the medical records, the services rendered, and all relevant Plan language.

### B. Prejudgment Interest is Not Appropriate

Prejudgment interest is "appropriate when its award serves to compensate the injured party and its award is otherwise equitable" and is "considered proper in ERISA cases."[110] Generally, prejudgment interest is compensation for the loss of use of money—owing but

---

[107] *Id.* at 1175–76 (brackets, citations, and internal quotation marks omitted).

[108] *See id.*

[109] *Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1289 (10th Cir. 2002).

[110] *Allison v. Bank One-Denver*, 289 F.3d 1223, 1243 (10th Cir. 2002)*, as amended on denial of reh'g* (June 19, 2002).

withheld amounts.[111] Because the court remands this matter to the claims administrator rather

than award benefits, prejudgment interest is not warranted.

### C. Attorney Fees

The five criteria for determining attorney fees are,

(1) the degree of the opposing parties' culpability or bad faith; (2) the ability of
the opposing parties to personally satisfy an award of attorney's fees; (3) whether
an award of attorney's fees against the opposing parties would deter others from
acting under similar circumstances; (4) whether the parties requesting fees sought
to benefit all participants and beneficiaries of an ERISA plan or to resolve a
significant legal question regarding ERISA; and (5) the relative merits of the
parties' position.[112]

The first factor weighs against awarding attorney fees. Aetna denied Plaintiffs benefits

because it determined that the educational services exclusion applied since Daniels Academy

describes itself as a boarding school.[113] The court is remanding the matter for Aetna's further

consideration because the record evidence suggests that W.T. received therapeutic services in

addition to educational services.[114] Also, on the issue of precertification, in its response to

Plaintiffs' first level appeal Aetna correctly stated the Plan's standard for awarding benefits

based on the failure to precertify.[115] And it is not clear that Aetna is taking a different position in

response to Plaintiffs' second level appeal. The court does not make a good faith or culpability

finding. The first factor relates closely to the fifth factor—the relative merits of the parties'

---

[111] *Caldwell*, 287 F.3d at 1286 (explaining that prejudgment interest in the Tenth Circuit "compensate[s] the wronged party for being deprived of the monetary value of his loss from the time of the loss to the payment of the judgment" (citation and internal quotation marks omitted)).

[112] *Gordon v. United States Steel Corp.*, 724 F.2d 106, 109 (10th Cir. 1983)

[113] *See* AETTEP 248.

[114] *See, e.g.*, *id.* 256, 259, 263, 266–67, 270, 272, 275–80, 288–89, 292, 299–300, 308–09, 312–15, 317–20, 328–29, 332, 335–36.

[115] *Id.* 630.

position. Because the relative merits of the parties' position is unclear at this point in the litigation, the fifth factor also weighs against awarding attorney fees.

Given the foregoing and the record in this case, the court finds it unnecessary to analyze the second, third, and fourth factors. Although no one factor is necessarily dispositive,[116] here, the first and fifth factors are sufficient to decide the issue. Accordingly, the court declines to award attorney fees.

## ORDER

For the reasons stated in this Memorandum Decision and Order:

1. Defendants' Motion for Summary Judgment is DENIED;

2. Plaintiffs' Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART;

    a. The court DENIES Plaintiffs' request for an order awarding benefits under the Plan;

    b. The court DENIES Plaintiffs' request for prejudgment interest; and

    c. The court GRANTS Plaintiffs' motion as to find Aetna's benefits determinations arbitrary and capricious.

3. Plaintiffs' request for attorney fees and costs is DENIED.

4. Defendants' decisions denying Plaintiffs benefits for services at Daniels Academy are VACATED and this matter are remanded back to Aetna for further proceedings consistent with this decision.

---

[116] *See McGee v. Equicor-Equitable HCA Corp.*, 953 F.2d 1192, 1209 n. 17 (10th Cir. 1992) ("[W]e note the five *Gordon* factors are merely guidelines, and while courts need not consider each factor, no factor should be held dispositive.").

Signed December 15, 2020.

BY THE COURT

David Barlow
United States District Judge